IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IMPROVED SEARCH LLC,<br><br>                Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>                Defendant. | **1:16CV650**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on the objections, D.I. 74, to the report and recommendations of the magistrate judge, D.I. 68. This is a patent infringement action, wherein the plaintiff alleges infringement against the defendant for United States Patent Nos. 6,604,101 ("the '101 patent") and 7,516,154 ("the '154 patent") (collectively, the "Asserted Patents"). The patents at issue regard Internet search techniques that perform something known as "dialectal standardization" which means terms are replaced in a different dialect of the same language. Plaintiff objects to the claim construction recommendations of the magistrate judge.

**STANDARD OF REVIEW**

The standard of review is governed by 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b). The district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made" and "may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C). Similarly, Rule 72(b)(3) requires de novo review of any recommendation that is dispositive of a claim or defense of a party.

1

The Supreme Court has construed the statutory grant of authority conferred on magistrate judges under 28 U.S.C. § 636 to mean that nondispositive pretrial matters are governed by § 636(b)(1)(A) and dispositive matters are covered by § 636(b)(1)(B). *Gomez v. United States,* 490 U.S. 858, 873-74 (1989); *see also* Fed. R. Civ. P. 72(a). Under subparagraph (B), a district court may refer a dispositive motion to a magistrate judge "to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition." 28 U.S.C. § 636(b)(1)(B); *see EEOC v. City of Long Branch,* 866 F.3d 93, 99–100 (3d Cir. 2017). The product of a magistrate judge, following a referral of a dispositive matter, is often called a "report and recommendation." *Id.* "Parties 'may serve and file specific written objections to the proposed findings and recommendations' within 14 days of being served with a copy of the magistrate judge's report and recommendation." *Id.* (quoting Fed. R. Civ. P. 72(b)(2)).

"If a party objects timely to a magistrate judge's report and recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *EEOC,* 866 F.3d at 99 (quoting 28 U.S.C. § 636(b)(1)).

Claim construction determinations in an R&R are reviewed de novo. *See St. Clair Intellectual Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.,* 691 F. Supp. 2d 538, 542 (D. Del. 2010); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Claim construction falls "exclusively within the province of the court," not that of the jury. *Teva Pharm. USA, Inc. v. Sandoz, Inc.,* 135 S. Ct. 831, 837 (2015) (quoting *Markman,* 517 U.S. at 370). It is proper for courts to "treat the ultimate question of the proper construction of the patent as a question of law in the way that [courts] treat document construction as a question of law." *Id.* at 837, 841 (noting that when the court relies solely upon the intrinsic evidence—the patent claims, the

2

specification, and the prosecution history—the court's construction is a determination of law, however, underlying factual determinations are reviewed for clear error).

The claims of a patent define the scope of the patent. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). The claims of a patent are of primary importance in determining what is patentable and the function and purpose of a claim is to "delimit the right to exclude." *Id.* The purpose of claim construction is to "determin[e] the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd,* 517 U.S. 370 (1996). A claim construction order will dictate how the court will instruct the jury regarding a claim's scope. *O2 Micro Int'l Ltd. v. Beyond Innovation Technology Co., Ltd.,* 521 F.3d 1351, 1359 (Fed. Cir. 2008).

The process of construing a claim term begins with the words of the claims. *Phillips,* 415 F.3d at 1312-14; *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996). Absent contravening evidence from the specification or prosecution history, plain and unambiguous claim language controls the construction analysis. *DSW, Inc. v. Shoe Pavilion, Inc.,* 537 F.3d 1342, 1347 (Fed. Cir. 2008). However, the claims "must be read in view of the specification, of which they are a part." *Phillips,* 415 F.3d at 1315 (quoting *Markman,* 52 F.3d at 979); *see Tempo Lighting, Inc. v. Tivoli,* LLC, 742 F.3d 973, 977 (Fed. Cir. 2014) (stating in claim construction, the court "gives primacy to the language of the claims, followed by the specification"). Additionally, the prosecution history, while not literally within the patent document, serves as intrinsic evidence for purposes of claim construction. *Id.*

If a claim term remains ambiguous after an examination of intrinsic evidence, the court may resort to extrinsic evidence. *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). Extrinsic evidence includes expert and inventor testimony, dictionaries, and learned treatises. *Phillips,* 415 F.3d at 1317. Extrinsic evidence is less

reliable and less persuasive than intrinsic evidence since such evidence is not part of the patent and was not created concurrently with the prosecution of the patent. *Id.* at 1317-19; *Summit 6, LLC v. Samsung Electronics Co.,* 802 F.3d 1283, 1290 (Fed. Cir. 2015) ("Although courts are permitted to consider extrinsic evidence, like expert testimony, dictionaries, and treatises, such evidence is generally of less significance than the intrinsic record."). "Extrinsic evidence may not be used 'to contradict claim meaning that is unambiguous in light of the intrinsic evidence.'" *Summit 6, LLC,* 802 F.3d at 1290 (quoting *Phillips,* 415 F.3d at 1324).

"[A] district court is not obligated to construe terms with ordinary meanings, lest trial courts be inundated with requests to parse the meaning of every word in the asserted claims." *O2 Micro Int'l Ltd.,* 521 F.3d at 1360. However, when the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute. *Id.*

The words of a claim are generally given their ordinary and customary meaning, which is the meaning a term would have to a person of ordinary skill in the art in question at the time of the invention. *Phillips,* 415 F.3d at 1313. The inquiry into how a person of ordinary skill in the art understands a term provides an objective baseline for which to begin claim interpretation. *Id.* "In some cases, the ordinary meaning of claim language . . . may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

"'There are only two exceptions to the general rule [that claim terms are given their plain and ordinary meanings to one of skill in the art]: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution. '" *Golden Bridge Tech., Inc. v. Apple Inc.,* 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Entm't*

4

*Am. LLC,* 669 F.3d 1362, 1365 (Fed. Cir. 2012)). "To act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning." *Thorner,* 669 F.3d at 1365-66 (quoting *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1366 (Fed. Cir. 2002)). "It is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments, the patentee must 'clearly express an intent' to redefine the term." *Id.* at 1366 (quoting *Helmsderfer v. Bobrick Washroom Equip., Inc.,* 527 F.3d 1379, 1381 (Fed. Cir. 2008)). The inventor's written description of the invention is relevant and controlling insofar as it provides clear lexicography. *Id.*

The court is guided in the claim construction endeavor by several "canons of claim construction" or guideposts. *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.,* 246 F.3d 1368, 1376 (Fed. Cir. 2001). Under the doctrine of claim differentiation, a dependent claim has a narrower scope than the claim from which it depends, and an independent claim has a broader scope than the claim that depends from it. *Free Motion Fitness, Inc. v. Cybex Int'l, Inc.,* 423 F.3d 1343, 1351 (Fed. Cir. 2005). Also, ordinarily, claims are not limited to the preferred embodiments disclosed in the specification. *Phillips,* 415 F.3d at 1323. Different words in a patent have different meanings and the same words have the same meaning. *Innova/Pure Water, Inc., v. Safari Water Filtration Systems, Inc.,* 381 F.3d 1111, 1119-20 (Fed. Cir. 2004). Use of the open-ended term of art, "comprising," allows the addition of other elements so long as the named elements, which are essential, are included. *See Genentech, Inc. v. Chiron Corp.,* 112 F.3d 495, 501 (Fed. Cir. 1997). Generally, a preamble is not limiting. *Summit 6, LLC,* 802 F.3d at 1292 (noting, for example that preamble language that merely states the purpose or intended use of an invention is generally not treated as limiting the scope of the claim). "When the applicant adds a claim or otherwise amends his specification

5

after the original filing date, . . . the new claims or other added material must find support in the original specification." *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. General Elec. Co.,* 264 F.3d 1111, 1118 (Fed. Cir. 2001) (noting that "the written description requirement and its corollary, the new matter prohibition of 35 U.S.C. § 132, both serve to ensure that the patent applicant was in full possession of the claimed subject matter on the application filing date").

When looking at a specification in the patent, the court adheres to two axioms. *Liebel-Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 904 (Fed. Cir. 2004). On the one hand, claims must be read in view of the specification, and, on the other hand, a court may not read a limitation from the specification into the claims. *Id.; Innovad Inc. v. Microsoft Corp.,* 260 F.3d 1326, 1332 (Fed. Cir. 2001) (noting that the "interpretative process forbids importing limitations from the specification into the defining language of the claims."). If possible, claims should be construed to preserve the claim's validity, but that maxim is limited "to cases in which 'the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous.'" *Phillips,* 415 F.3d at 1327 (quoting *Liebel-Flarsheim Co.,* 358 F.3d at 911).

**DISCUSSION**

The magistrate judge conducted a hearing on February 13, 2018, and she thereafter determined claim constructions in this case. D.I. 68. The claims at issue concern (1) the '101 patent, entitled "Method and system for translingual translation of query and search and retrieval of multilingual information on a computer network,", and (2) the '154 patent, entitled "Cross language advertising". The magistrate judge

recommended that the court adopt Microsoft's proposed construction of the disputed terms, which the magistrate judge found had support in the intrinsic record.

Plaintiff objects to the magistrate judge's claim construction and disagrees with the claim construction recommendations by the magistrate judge. D.I. 74. Plaintiff also contends that the magistrate judge erred when "[f]irst, she overlooked the consistent use of dialectal standardization in the various claims and in the specification. Second, the Magistrate Judge misinterpreted the specification and confused the term dialectal standardization with dialectal variations. Third, the Magistrate Judge adopted a construction that did not "naturally align with the Patent's description of the invention" despite her citation to the authority that stands for that very claim construction principle." D.I. 74 at 5.

The court agrees with the magistrate judge's recommended construction, finding she is correct as a matter of law and fact. The court believes that the plaintiff attempts to read out the word "dialectal" which is a crucial part of the patent. It does appear that Microsoft is attempting to achieve consistency in the meaning of the words across dialects as supported by the intrinsic evidence. The court also agrees with the magistrate judge that it appears plaintiff's proposed constructions changed and evolved during the Markman briefing. *See* D.I. 68 at 14 n.2. The magistrate judge also discussed the means-plus-function claim elements at length, and she concluded that the server sends advertisements to the user but does not identify the server as the structure that would send the search results to the user. The magistrate judge then concluded, stating: "the server disclosed in the '154 patent is a generic server, and there is no intrinsic evidence that an algorithm for sending search results and matching advertising cues to a user's

display is part of the claimed server. (D.I. 61 at ¶¶ 9-11)." D.I. 68 at 13. The court agrees. Finally, the magistrate judge recommended that the term "reading aids", which has no well-known meaning in the art, be construed as requested by Microsoft. The magistrate judge determined that there was no support in the record for Improved's requested construction. The court agrees with all of the magistrate judge's findings.

The court adopts the report and recommendation of the magistrate in its entirety, including the claims constructions. D.I. 68 at 24-25.

THEREFORE, IT IS ORDERED THAT:

1. Plaintiff's objections, D.I. 74, are overruled; and
2. The report and recommendation of the magistrate judge, D.I. 68, is adopted in its entirety.

Dated this 21st day of August, 2018.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge